# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re **LAKESIDE VENTURES, LLC**, Debtor. | Case No. **08-61562-7** |
| **LORI L BRYDEN**, Plaintiff. -vs- **LAKESIDE VENTURES, LLC**, Defendant. | Adv No. **09-00093** |

# MEMORANDUM OF DECISION

At Butte in said District this 22nd day of June, 2010.

In this adversary proceeding the Plaintiff Lori L. Bryden ("Lori") seeks to recover damages from the Defendant/Debtor Lakeside Ventures, LLC ("LLC"), her former employer, for wrongful discharge under MONT. CODE ANN. ("MCA") § 39-2-904(1)(b). LLC denies that its discharge of Lori was wrongful, or that she suffered damages as a result. After trial of this cause, and after review of the parties' briefs, the record and applicable law, this matter is ready for decision. For the reasons set forth below, Judgment shall be entered for the Defendant dismissing Lori's complaint. The Court concludes that Plaintiff failed to satisfy her burden of proof that her discharge from LLC's employment was not for good cause under MCA § 39-2-

1

903(5).

The parties agreed in the approved Final Pretrial Order (Docket No. 14) that this Court has jurisdiction of this adversary proceeding under 28 U.S.C. §1334(b), and agree that this is a core proceeding under 28 U.S.C. § 157(b)(2).  This Memorandum of Decision includes the Court's findings of fact and conclusions of law under F.R.B.P. 7052 (applying Fed. R. Civ. P. 52 in adversary proceedings).

Trial of this adversary proceeding was held at Missoula on April 14, 2010.  Lori appeared and testified, represented by attorney Scott G. Hilderman of Kalispell, Montana.  Defendant LLC was represented by attorney Jon R. Binney ("Binney") of Missoula.  Plaintiff's Exhibits ("Ex.") 1, 2, 3, 4, 5, and Defendant's Ex. A, B, C, D, E, and F, were admitted into evidence by stipulation.  At the conclusion of the parties' cases-in-chief the Court granted counsel time to file briefs, which have been filed and reviewed by the Court together with the record and applicable law.

## FACTS

The approved Final Pretrial Order set forth the following agreed facts:

a.) At all times pertinent to this action, Plaintiff was a resident of Lakeside, Flathead County, Montana.

b.) Defendant Lakeside Ventures, LLC is a limited liability company with its principal office address in Big Arm, Lake County, Montana, and its principal place of business in Lakeside, Flathead County, Montana.

c.) Plaintiff has worked for Defendant Lakeside Ventures, LLC in various capacities since December 1, 1999.  Plaintiff accepted a manager position in April 2004.  Her employment was probationary through December 31, 2005.  Plaintiff successfully completed the probationary period.  Plaintiff was working full time, 40 hours per week, on the date of her discharge.

2

    d.) Plaintiff was employed at Defendant Lakeside Venture, LLC's Homestead Café, Bar and Casino as manager from April 23, 2004 until November 2007.

    e.) At the time of Plaintiff's termination of employment by Defendant in November 2007, Plaintiff was making the sum of $32,500.00[1].

    f.) Prior to November 29, 2007, customers of Homestead Café, Bar and Casino had complained that Homestead employees were gambling on machines in the establishment which was unfair to customers[2].

    g.) Given the above-referenced complaints, William Weimar's instruction to Plaintiff to post a notice to employees forbidding gambling on company premises by employees was reasonable.

    h.) Plaintiff was employed by Defendant under a written agreement dated May 28, 2005.

Ex. A is the "Management Agreement" governing Lori's employment as manager of the Defendant ("LLC"). Lori testified that her position was bar and casino manager[3] at the Homestead. She testified that she was in charge of the bar and casino employees, with whom she had rapport. Lori did the casino books, emptied the gambling machines and registers, refilled the ATM, and collected bills. She testified that the owner of the LLC, Bill Weimar ("Weimar"), did not have daily managerial responsibilities, but that he came to the restaurant a couple of times per week. She testified that Weimar told Lori in April 2006 that she was an "indispensable"

---

[1] In addition, Lori testified that the LLC paid premiums for a $250,000 life insurance policy on her since April 2006, and established a $250 account in a 401k or IRA. The 401k contribution of $250 was a one-time payment and there was no ongoing contribution by the LLC.

[2] Ex. D explains that employee gambling creates a perception among casino customers that employees may know which machines are due to hit because they had not paid off for awhile, which customers complained is not fair.

[3] Lori testified that, after the business was remodeled and began offering fine dining, she told her employer that she was not a fine dining manager. A different general manager was hired and Lori became the bar and casino manager.

3

employee at Homestead. In addition to her salary, she testified that Weimar told her verbally that she was entitled to ongoing performance bonuses of $100 per week.

Ex. A states on page 2 that it "replaces and is a novation" for the prior management agreements and amendments thereto. Lori admitted that Ex. A is the applicable agreement. Immediately thereafter Ex. A states that Lori "agrees that her employment shall be considered probationary through December 31, 2005, and at will employment thereafter." Since the agreed facts establish that Lori completed her probationary period, her employment was "at will."

On page 1, Ex. A, states that the LLC reserves the right "to make all ultimate and final decisions regarding ... the hiring, firing, . . . or other change of status of LLC's other employees." Ex. A also provides that the LLC reserves the right to make all ultimate and final decisions regarding "[a]uthority to remodel or otherwise make changes in the premises and/or the business operation requiring non-routine actions ...." The agreed facts reiterate that Weimar's order to Lori to post a notice forbidding gambling on premises by employees "was reasonable."

Lori testified that the customers and LLC employees complained to her that the general manager[4] was in the casino while on duty, drinking alcohol and gambling. Lori told Weimar about the general manager's drinking and gambling. She testified that a meeting was held with Weimar, after which he ordered that, effective immediately, no gambling by employees was allowed at the Homestead Casino. Lori testified that she had no issue with the prohibition

---

[4]Lori identified the general manager as James Swain. In addition to Swain's drinking and gambling while on duty, Lori testified that a manager wrote advance checks to himself until he was removed from the checking account. In addition, because money was missing from the safe a camera was installed, and the safe combination changed. She testified that Swain was terminated two weeks after Lori's termination for charging personal expenses on the LLC's credit card.

against employee gambling. On cross examination she testified that the Homestead was Weimar's business and he could "make any decision he wants." However, she testified that she knew there would be grumbling by the employees because they enjoyed gambling at the Homestead and felt that they were being punished for the general manager's conduct[5].

Lori posted a memo on the premises after lunch on November 28, 2007. Ex. B is the memo and it states:

> EFFECTIVE IMMEDIATELY NO EMPLOYEES ARE ALLOWED TO GAMBLE ON THE PREMISES AT ANY TIME.
> THIS HAS ARISEN DUE TO A MEETING WITH BILL, THE ACCOUNTANT[6], JAMES AND MYSELF. JUST WANT TO LET YOU KNOW I AM JUST AS UPSET OVER THIS AS I KNOW EACH OF YOU ARE.
>
> LORI

Lori testified that she wrote the last sentence on Ex. B to show sympathy with the employees, who felt that they were being punished for the general manager's conduct. She testified that she received a call from Weimar that same day at about 3 p.m. She testified that Weimar was displeased and "very upset" by the memo, and that she told him she was sorry and would change the last sentence. She testified that Weimar told her that she "better get on board," and she then went into the office and removed the last line from the memo.

The next day, November 29, 2007, Weimar went to Lori's house and handed her a memo, Ex. C, described on the reference line as "Notice of Termination" which states:

> Attached is a copy of the notice you posted concerning my decision to prohibit

---

[5] Lori admitted that she also gambled at the Homestead, but not while she was on duty.

[6] Lori testified that the accountant stated at the meeting that it was not normal to allow employees to gamble at their place of employment.

employees from gambling at the Homestead. Your memorandum to the employees which clearly stated that you opposed that policy was entirely inappropriate. Giving me the benefit of your advice or concerns is one thing, but I cannot allow one of my managers to undercut my authority by communicating your displeasure with a decision that I had every right to make. For that reason, you are terminated immediately. I am sorry that it has come to this, but I value loyalty in employees highly and that quality was not demonstrated by your actions.

Lori testified Weimar handed her a check along with Ex. C, which paid her through the date of Ex. B. She testified that she was upset and devastated by her termination, as she had never been fired before. She did not feel that her statement in Ex. B was insubordinate.

Lori testified that she found new employment at the VFW on June 30, 2008, at a starting salary of $26,000, which increased after review to $30,000. She earned $14,596.13 in 2008, and earned $30,740.46 at the VFW in 2009. Ex. E.

The Defendant filed a voluntary Chapter 7 petition on November 7, 2008. A claims bar date was set for April 6, 2009. Lori filed Proof of Claim No. 2 on March 30, 2009, asserting a secured claim[7] in the amount of $140,000.

## DISCUSSION

Montana's Wrongful Discharge from Employment Act ("WDEA") provides at MCA § 39-2-902: "This part sets forth certain rights and remedies with respect to wrongful discharge. Except as provided in 39-2-912, this part provides the exclusive remedy for a wrongful discharge from employment."

Lori contends that her discharge by the LLC was wrongful because she had a long track record of exemplary service, performed her duties well, had no prior disciplinary problems, and

---

[7]The security is not identified on Claim 2, except as "other." The value of the security is not given, except as "unk".

6

had excellent prospects of continued employment. She argues that the LLC's decision to terminate her was whimsical and/or arbitrary or capricious, and not logically related to the needs of the business, especially when compared to the other managers' conduct of drinking and gambling on duty, and mismanaging company funds, which did not result in any kind of serious negative consequences. Lori contends that she suffered damages as a result of her wrongful discharge in the total amount of $78,158. The Defendant argues that it had a legitimate business reason to terminate Lori because it was seeking to control the gambling activities on its premises when she stated disagreement on Ex. B. Defendant contends that her stated disagreement constituted disobedience or insubordination, and therefore her termination was for good cause.

     The elements of a wrongful discharge claim are set forth in MCA § 39-2-904(1). Plaintiff's claim is based on MCA § 39-2-904(1)(b): "A discharge is wrongful only if: . . . (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment ...." Section 39-2-903(5) states in pertinent part: "'Good cause' means reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job related duties, disruption of the employer's operation, or other legitimate business reason." Applying this definition to the facts in the instant case, the Court finds that the LLC's termination of Lori, for the reasons stated in Ex. C, based on her performance of job related duties in posting the notice, was based on her failure to satisfactorily perform job related duties, and disruption of the employer's operation, and was for legitimate business reasons.

     Lori's own testimony and admissions establish that Weimar's instruction to Lori to prohibit employee gambling was reasonable and job-related. Lori admitted that the accountant stated that employee gambling was not normal. She admits that Weimar had the right to prohibit

employee gambling and that she had no issue with it. Furthermore, Lori established numerous problems the LLC was experiencing with its management, including creating a presumption of unfairness among its customers by employee gambling, misuse of business funds, and misuse of business credit cards. Weimar's actions in prohibiting employee gambling was reasonable, was based on professional advice, and was understandable.

Weimar did not discharge Lori for disagreeing with him at the meeting with the accountant and other manager about the prohibition. He discharged her for adding in Ex. B: "Just to let you know I am just as upset over this as I know each of you are." Weimar terminated Lori because, as stated on Ex. C: "I cannot allow one of my managers to undercut my authority by communicating your displeasure with a decision that I had every right to make." Given the problems the LLC was having with its management, employees and customers, Weimar's decision to terminate an admittedly "indispensable" employee was based on Lori's failure to satisfactorily perform the job-related duty Weimar gave her to post the memo prohibiting employee gambling, and his perceived disruption of his authority by her statement, and the Court concludes that the LLC's reasons were legitimate business reasons and good cause.

The Montana Supreme Court has explained:

A legitimate business reason for termination is defined as a reason that is "neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Kestell v. Heritage Health Care Corp.,* 259 Mont. 518, 525, 858 P.2d 3, 7 (1993). We have further explained

> An employer's legitimate right to exercise discretion over whom it will employ must be balanced, however, against the employee's equally legitimate right to secure employment. The balance should favor an employee who presents evidence, and not mere speculation or denial, upon which a jury could determine that the reasons given for his termination were false, arbitrary or

capricious, and unrelated to the needs of the business.

*Kestell,* 259 Mont. at 526, 858 P.2d at 8 (internal citation omitted). *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 23, 336 Mont. 105, ¶ 23 152 P.3d 727, ¶ 23; *see also Becker v. Rosebud Operating Services, Inc.*, 2008 MT 285, ¶ 24, 345 Mont. 368, ¶ 24, 191 P.3d 435, ¶ 24.

The reasons given by Weimar in Ex. C for terminating Lori are not false, arbitrary or capricious. Her written statement in the memo, Ex. B, that she is upset with Weimar's decision to prohibit employee gambling was inconsistent with, and undercut, Weimar's decision.

In *Johnson v. Costco* the Supreme Court reversed the trial court's grant of summary judgment to Costco in a wrongful discharge claim against an employee for violating its employment policy against "grazing." *Id.*, ¶ 27. The court reversed because of the existence of evidence, which could lead a jury to believe that Costco applied its employment policy in an arbitrary and capricious manner, since other employees had violated the grazing policy repeatedly. *Id.* The instant case is beyond the summary judgment stage, and includes evidence that the general manager was gambling and drinking during his shift. However, no evidence exists in the instant record that, prior to Ex. B, gambling by employees had been prohibited. Lori testified that she and other employees also gambled. Lori was not terminated for violating the gambling policy, but instead for lack of loyalty and undercutting Weimar's authority by communicating her displeasure with Weimar's decision to the employees in Ex. B.

A crucial distinction between *Johnson* and the instant case is the fact that Lori was in a managerial position. The Montana Supreme Court, in defining "good cause" wrote:

> In applying this definition we stress the importance of the "right of an employer to exercise discretion over who it will employ and keep in employment." [*Buck v. Billings Montana Chevrolet, Inc.,* (1991), 248 Mont. 276, 282, 811 P.2d 537,

9

>540].  It is inappropriate for courts to become involved in the day-to-day employment decisions of a business.  *Buck*, 248 Mont. at 282, 811 P.2d at 541.  Further, the discretion we afford employers is at its greatest in cases like this one, where the employee occupies a "sensitive" managerial position exercising "broad discretion," specifically, where the employment relationship is between a company's board of trustees and its general manager.  *See, Buck*, 248 Mont. at 283, 811 P.2d at 541.

*McConkey v. Flathead Electric Co-op*, 2005 MT 334, ¶ 26, 330 Mont. 48, 54-55, ¶ 26, 125 P.3d 1121, ¶ 26

"[W]here the complaining employee is in an executive position, makes top level policy and strategic decisions, and great trust is placed in his judgment, courts must be cautious in second guessing employment decisions . . . ."  *McConkey*, ¶ 33, citing *Buck,* 248 Mont. at 282-83, 811 P.2d at 541.  Lori was not the general manager, but she was the manager of the bar and casino of the Homestead.  She was an "indispensable" employee, and by her own testimony she had a rapport with the Homestead employees and therefore occupied a sensitive managerial position.  Weimar assigned to Lori the task of posting the memo implementing a new company policy prohibiting employee gambling.  She admits that he had the right to do it, but her statement in Ex. B that she was upset over the new policy was inconsistent with her assignment, was inappropriate, and undercut Weimar's authority.

While, given Lori's position, the Court does not afford the employer the most discretion under *McConkey* and *Buck,* the instant case involves an employer's conclusion that a manager lacked loyalty and undercut the owner's policy.  In this Court's view such a decision to terminate a manager who has lost the confidence of the employer falls within the employer's discretion over who it will keep in employment*.  McConkey*, ¶ 26, citing *Buck,* 248 Mont. at 282, 811 P.2d at 540.

The Court finds that the stated ground for LLC's dismissal of Lori was reasonable and job-related. Therefore, the Court concludes that Lori failed her burden of proof to show that her dismissal was not for good cause under MCA § 39-2-903(5) and § 39-2-904(1)(b).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this adversary proceeding under 28 U.S.C. §1334(b).

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

3. Plaintiff Lori L. Bryden failed to satisfy her burden of proof by a preponderance of the evidence to show that her discharge from employment by the Defendant was not for good cause under MCA § 93-2-904(1)(b) and § 39-2-903(5).

**IT IS ORDERED** a separate Judgment shall be entered in favor of the Defendant Lakeside Ventures LLC, and against the Plaintiff Lori L. Bryden, dismissing the Plaintiff's complaint.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana